UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

BASF CORPORATION,

                        Plaintiff,

    -against-

MASTER COLLISION INC., and JAY LIPARI as
administrator of the Estate of Bob Lipari,

                        Defendants.
--------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
24-CV-1980(GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this breach of contract action, on referral from the Honorable Gary R. Brown for Report and Recommendation, is Plaintiff BASF Corporation's ("BASF" or "Plaintiff") motion for a default judgment against Defendant Master Collision Inc. ("Master Collision") pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [79]. BASF has settled its claims against Defendant Jay Lipari, as Administrator of the Estate of Master Collision's former owner, Bob Lipari ("Lipari" and together, "Defendants"),[1] for an undisclosed amount and therefore does not seek a default judgment against Lipari. *Id.* Plaintiff, nevertheless, seeks a judgment against Master Collision for the entire amount it seeks to recover in this action. *Id.* For the reasons set forth herein, the Court respectfully recommends that BASF's motion for

---

[1] On or about January 24, 2020 – after the parties entered the contract that forms the basis of this action, but before the action was filed – Bob Lipari passed away. Accordingly, BASF named Bob Lipari's estate, which is represented by Jay Lipari, as a Defendant in lieu of Bob Lipari personally. *See generally* Compl. Unless otherwise specified, the Court interchangeably refers to Bob Lipari, Jay Lipari, and Bob Lipari's Estate as "Lipari" or the "Estate."

default judgment against Master Collision be granted in part and denied in part without prejudice and with leave to renew as described below.

## I.    BACKGROUND

Unless stated otherwise, the following facts are taken from the Complaint ("Compl."), DE [1], and are accepted as true for purposes of the instant motion. *Braun v. Heights Realty Advisors, LLC*, No. 23-CV-3837(BMC), 2024 WL 640156, at *1 (E.D.N.Y. Feb. 15, 2024) ("It is hornbook law that on a motion for default judgment, the well-pleaded allegations of the complaint pertaining to liability are accepted as true.").

### A.    Relevant Parties and Facts

#### 1.    Parties

BASF is a Delaware corporation with a principal place of business in New Jersey.  Compl. ¶ 1.  It is in the business of selling "aftermarket paints, refinishes, coating, primers, thinners and reducers as well as other related products and materials for the reconditioning, refinishing and repainting of automobiles, trucks, and other vehicles" (collectively, the "Refinish Products").  *Id.* at ¶¶ 3, 4, 11, 16, 18.  BASF "resells the Refinish Products to distributors that in turn sell the Refinish Products to automotive body shops that are in the business of reconditioning, refinishing, and repainting of automobiles, trucks, and other vehicles."  *Id.* at ¶ 3.

One such automotive body shop that purchases Refinish Products from BASF and its distributors is Defendant Master Collision.  *Id.* at ¶ 4.  Master Collision is a New York corporation with a principal place of business located at 525 Lakeview

Avenue, Rockville Centre, New York 11570. *Id.* at ¶ 2. At all relevant times, Master Collision was "an autobody shop with Refinish Products needs that was engaged in the business of reconditioning, refinishing and repainting automobiles, trucks, and other vehicles . . . ." *Id.* at ¶ 4. Essentially, BASF sold Refinish Products to Master Collision, which Master Collision then used to repair customers' automobiles.

2. <u>Relevant Terms of the Requirements Agreement</u>

This action involves three categories of damages arising from the parties' agreement described below: (1) a minimum purchase requirement that Master Collision agreed to purchase from BASF (the "Minimum Purchase Requirement"); (2) repayment of collateral in the event Master Collision did not satisfy its Minimum Purchase Requirement; and (3) repayment for equipment that BASF loaned to Master Collision. *Id.* at ¶¶ 17-21. As described below, although the Court concludes that a default judgment against Master Collision is appropriate as to liability, the Court respectfully recommends Plaintiff's motion be denied without prejudice and with leave to renew upon filing additional information and proper substantiation.

i. *Minimum Purchase Requirement*

On or about April 10, 2018, BASF, Master Collision, and Bob Lipari, acting on behalf of Master Collision, entered a "Requirements Agreement" that established a minimum amount of Refinish Products that Master Collision would purchase from BASF (the "Requirements Agreement"). *Id.* at ¶ 10, Ex. A. Pursuant to Paragraphs 1 and 2 of the Requirements Agreement, Master Collision was "required to fulfill one hundred percent of its requirements for Refinish Products up to a Minimum Purchase

3

Requirement of $3,700,000 with BASF Galasurit and RM Refinish Products . . . ." Compl. ¶ 11; Requirements Agreement ¶¶ 1-2.[2]

### ii.    Contract Fulfillment Consideration

Paragraph 3 of the Requirements Agreement addresses "Contract Fulfillment Consideration." Requirements Agreement ¶ 3. This provision effectively runs in the opposite direction of the Minimum Purchase Requirement and requires that BASF pay Master Collision consideration in anticipation of satisfaction of the Minimum Purchase Requirement. *Id.* In the event Master Collision did not satisfy the Minimum Purchase Requirement, Master Collision would be required to repay BASF a percentage of the Contract Fulfillment Consideration pursuant to a schedule described below. *Id.* Specifically, BASF was required to pay Master Collision $600,000 "in consideration of [Master Collision] fulfilling all of its obligations" under the Requirements Agreement. *Id.* The provision further states, and Master Collision agreed, that pursuant to an earlier April 2012 Agreement, $90,650 in consideration "remain[ed] unearned" and was therefore incorporated into the instant Requirements Agreement, for a total of $690,650 that was subject to reimbursement in the event Master Collision did not meet its Minimum Purchase Requirement. *Id.*

Relevant here, "if the Requirements Agreement [was] terminated for any reason prior to [Master Collision] fulfilling its Minimum Purchases requirement,

---

[2] Neither the Complaint nor the Requirements Agreement further identify BASF Galasurit or RM Refinish Products, or explains their relationship, if any, with any of the parties. Nevertheless, BASF alleges that Master Collision agreed to purchase $3,700,000 in Refinish Products from BASF. Compl. ¶ 11; Requirements Agreement ¶ 2.

[Master Collision] was required to . . . refund the New Consideration and Previous Consideration, totaling $690,650.00 in accordance with the following schedule":

| Amount Master Collision Purchases from BASF | Amount of Contract Fulfillment Consideration Master Collision Must Refund |
|---|---|
| Less than 20% of Minimum Purchase Requirement | 100% |
| Less than 40% and greater than 20% of Minimum Purchase Requirement | 90% |
| Less than 60% and greater than 40% of Minimum Purchase Requirement | 70% |
| Less than 80% and greater than 60% of Minimum Purchase Requirement | 50% |
| Less than 100% and greater than 80% of Minimum Purchase Requirement | 30% |
| 100% of Minimum Purchase Requirement | 0% |

Compl. ¶ 14; *see* Requirements Agreement ¶ 3.

### iii.    *Loaned Equipment*

As a final monetary consideration arising under the Requirements Agreement, in Paragraph 5, titled "Loaned Equipment and Consigned Inventory," BASF agreed to loan Master Collision thirteen categories of specifically enumerated equipment (the "Loaned Equipment"). *See* Requirements Agreement ¶ 5. In addition to identifying the Loaned Equipment, the Requirements Agreement states:

> The Loaned Equipment shall remain the property of BASF, shall only be used in conjunction with BASF Refinish Products, and at the option of BASF, shall be surrendered to BASF at the end of this Agreement in the same condition as delivered, reasonable wear and tear excepted. All Loaned Equipment shall be installed by or at the direction of [Master Collision], which shall be responsible for compliance with all applicable laws and regulations concerning the installation and operation of the Loaned Equipment.
>
> . . .
>
> Upon demand by BASF, but in no event earlier than the termination or expiration of the Term, [Master Collision] shall pay BASF for all or that portion of the consumed Consigned Inventory in accordance with the then current prices for said Consigned Inventory and this Agreement.

> In the event that the Consigned Inventory is unopened, [Master Collision] may return Consigned Inventory to BASF at no charge if the Consigned Inventory is deemed in saleable condition by BASF.

*Id.*

Neither the Requirements Agreement nor anything else Plaintiff has submitted provides the monetary value for any single piece of Loaned Equipment or for the total aggregate value of the Loaned Equipment. Nevertheless, and with no substation, BASF seeks to recover $29,211.65 for the value of the Loaned Equipment that BASF claims Master Collision has neither returned nor paid for. Compl. ¶ 20.

### iv.    *Personal Guarantee*

Finally, in Paragraph 13 of the Requirements Agreement, former owner of Master Collision, Bob Lipari, personally guaranteed Master Collision's performance under the Requirements Agreement (the "Personal Guarantee"). Specifically, the Personal Guarantee states:

> In order to induce BASF to enter into this Agreement and extend the Contract Fulfillment Consideration[,] Bob Lipari . . . hereby unconditionally guarantees the performance of [Master Collision] under the terms of the Agreement und hereby personally guarantees any repayment of the Contract Fulfillment Consideration to BASF as may be required under this Agreement.

Requirements Agreement ¶ 13 (alterations added). Accordingly, pursuant to the Requirements Agreement, Bob Lipari "personally and unconditionally guaranteed [Master Collision's] obligations under the Requirements Agreement . . . ." Compl. ¶ 15.

3. <u>Breach of the Requirements Agreement</u>

In or about April 2023, Master Collision "breached and ultimately terminated the Requirements Agreement by . . . ceasing and refusing to purchase any further BASF Refinish Products, thus never fulfilling its $3,700,000 Minimum Purchase Requirement; failing and refusing to refund the Contract Fulfillment Consideration to BASF; and failing and refusing to return or repay the value of the equipment." *Id.* at ¶ 16. As a result, BASF asserts that it is entitled to three categories of contractual damages arising out of the Requirements Agreement: (1) deficient payments for failure to satisfy the Minimum Purchase Requirement; (2) a refund for Contract Fulfillment Consideration deficiencies in accordance with the schedule listed above; and (3) the value of the Loaned Equipment that Master Collision has failed to return. *Id.* at ¶ 31. Pursuant to Paragraph 7 of the Requirements Agreement, Michigan law governs Plaintiff's claims.[3] *See* Requirements Agreement ¶ 7.

At the time of the breach, Master Collision had purchased $1,112,770.39 of Refinish Products from BASF, leaving a balance of $2,587,229.61 on the $3,700,000 Minimum Purchase Requirement. Compl. ¶ 17. Because Master Collision had purchased greater than 20%, but less than 40%, of the Minimum Purchase

---

[3] Although neither BASF nor Master Collision are Michigan corporations, *see* Compl. ¶¶ 1-2, they agreed that Michigan law governs the Requirements Agreement. *See* Requirements Agreement ¶ 7. Moreover, while not alleged in the Complaint, the Requirements Agreement states that BASF is located in Southfield, Michigan. *Id.* A "Court can accept the agreement of the parties" as to the substantive law that applies. *Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442, 453 (S.D.N.Y. 2005) (citing *Hannex Corp. v. GMI, Inc.,* 140 F.3d 194, 203 n.7 (2d Cir. 1998)); *see Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (observing that, where there is an express choice-of-law provision, "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction"). Accordingly, the Court applies Michigan substantive law as agreed to by the parties.

Requirement, pursuant to the schedule above, it was required to refund BASF 90% of the Contract Fulfilment Consideration, for a total of $621,585.00. *Id.* at ¶¶ 14, 18; *see* Requirements Agreement ¶ 3. Finally, BASF alleges that Master Collision has not returned the Loaned Equipment to BASF or paid BASF $29,211.65 for the value of the Loaned Equipment. Compl. ¶ 20. Combining these three categories of alleged damages, BASF seeks to recover $3,238,062.26 from Master Collision.

4. <u>Notice of Default</u>

On October 10, 2023, BASF informed Master Collision and the Estate that they were in default of their contractual obligations and demanded a refund of the Contract Fulfillment Consideration. *Id.* at ¶ 23. On November 17, 2023, BASF provided notice of its claim to the Estate pursuant to N.Y. Surr. Ct. Proc. Act § 1983. *Id.* at ¶ 24. BASF claims that it is owed: (1) $2,587,229.61 to satisfy the Minimum Purchase Requirement; (2) $621,585.00 to refund 90% of the Contract Fulfillment Consideration; and (3) $29,211.65 for the value of the Loaned Equipment. *Id.* at ¶ 21. BASF further asserts that that Bob Lipari's estate is personally liable for this amount pursuant to the Personal Guarantee provision of the Requirements Agreement. *Id.* at ¶¶ 35-40.

**B.    Procedural Background**

By way of a Complaint dated March 18, 2024, BASF commenced this action against Master Collision and Lipari. DE [1]. Plaintiff asserted causes of action for: (1) breach of contract against Master Collision; (2) breach of contract against the Estate; (3) unjust enrichment against all Defendants; and (4) declaratory relief

against all Defendants.  Compl. ¶¶ 26-50.  On April 1, 2024, a process server personally served Lipari with a copy of the Summons and Complaint.  DE [8].  On April 15, 2024, BASF effectuated service on Master Collision by delivering two copies of the Summons and Complaint to the Secretary of State of the State of New York. DE [15].

On August 2, 2024, Lipari filed his Answer to the Complaint as well as a third-party Complaint against Master Collision and Robert Zigman.  DE [19], [20].  On August 30, 2024, acting through counsel, Master Collision filed its Answer to Plaintiff's Complaint.  DE [35].  On September 24, 2024, the Court held an Initial Conference at which all parties appeared through counsel.  DE [40].  On October 1, 2024, Lipari moved for a default judgment with respect to his third-party claim against Master Collision, *see* DE [45], which he subsequently withdrew without prejudice and with leave to renew.  *See* Electronic Order Dated Oct. 2, 2024.  He did so on October 3, 2024, DE [46], but subsequently withdrew the motion with prejudice pursuant to stipulation by the parties.  DE [49].

On January 23, 2025, the Court held a status conference.  DE [66].  For the reasons stated on the record, Master Collision withdrew its Answer and acknowledged that it was in default.  *Id.*  Accordingly, the Court informed Plaintiff that it "may seek a certificate of default from the Clerk of the Court and proceed accordingly."  *Id.*  On February 28, 2025, Plaintiff requested that the Clerk of the Court enter a certificate of default against Master Collision.  DE [68].  On March 3,

9

2025, the Clerk of the Court entered a certificate of default against Master Collision on the grounds that it had "failed to appear or otherwise defend this action."  DE [69].

On July 29, 2025, BASF filed a stipulation of dismissal only as to Lipari, leaving Master Collision as the sole remaining Defendant, albeit unrepresented by counsel.  DE [77].  On August 25, 2025, BASF filed the instant motion, in which it seeks a default judgment against Master Collision because of the corporation's failure to participate in this action represented by counsel.  DE [79].  On August 26, 2025, Judge Brown referred Plaintiff's motion to this Court for a Report and Recommendation.  *See* Electronic Order Dated Aug. 26, 2025.  For the reasons set forth herein, the Court respectfully recommends that BASF's motion be granted in part and denied in part without prejudice and with leave to refile as described below.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  *Id.* at 55(b).  Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true.  *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-CV-4657(FB)(LB), 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015) (Report and Recommendation), *adopted by* 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

## III.  DISCUSSION

### A.  <u>Liability</u>

As stated above, BASF has resolved its claims against the Estate. DE [77]. Accordingly, the only claims that remain are those asserted against Master Collision. They include breach of contract, unjust enrichment, and declaratory relief. Master Collision has voluntarily withdrawn its Answer, and is unrepresented. DE [66]. Default judgment against Master Collision is therefore appropriate if liability is

properly established. *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*.") (citation omitted); *see Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202, 113 S. Ct. 716, 721 (1992) (holding that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel"); *Grace v. Bank Leumi Tr. Co. of N.Y.,* 443 F.3d 180, 192 (2d Cir. 2006) (holding that "[i]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney") (citation omitted); *Kramer v. Nat'l Fire Ins. Co. of Hartford,* No. 18-CV-4848(KMK), 2019 WL 3966166, at *5 (S.D.N.Y. Aug. 22, 2019) ("[A] layperson may not represent a corporation in which [s]he is the sole shareholder, a limited liability company of which [s]he is the sole member, or a partnership where [s]he is a partner.") (citation omitted); *see also Gunawan*, 897 F. Supp. 2d at 83; *Ferrera*, 2015 WL 3562624, at *2.

### 1.    Breach of Contract Against Master Collision

To prevail on a breach of contract claim under Michigan law, the plaintiff must establish "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 601-02, 865 N.W.2d 915, 922 (Mich. Ct. App. 2014); *see Tindle v. Legend Health, PLLC*, 346 Mich. App. 468, 474, 12 N.W.3d 667, 671 (Mich. Ct. App. 2023) (holding that a default judgment was appropriate for breach of contract claim); *Jackson v. Bulk AG Innovations, LLC*, 342

Mich. App. 19, 25-26, 993 N.W.2d 11, 15 (Mich. Ct. App. 2022) (holding that default judgment was appropriate but that the moving party failed to adequately establish the damages it sought based on a "lack of evidence as to damages").

Plaintiff's allegations, accepted as true, establish a claim for breach of contract against Master Collision. BASF alleges that it had a valid contract with Master Collision in the form of the Requirements Agreement. Compl. ¶¶ 27, Ex. A. Pursuant to the Requirements Agreement, which BASF has submitted in support of its motion, Master Collision agreed to purchase $3,700,000 in Refinish Products from Plaintiff. *Id.* at Ex. A. Master Collision also agreed to repay the Contract Fulfillment Consideration and the value of the Loaned Equipment. *Id.* In breach of this agreement, Master Collision has failed to purchase the agreed upon amount of Refinish Products, has not paid the Contract Fulfillment Consideration, and has not paid for the Loaned Equipment. *Id.* at ¶¶ 27-33. As a result, BASF alleges that it suffered damages. *Id.* These allegations are sufficient to establish a claim for breach of contract. *See Doe*, 308 Mich. App. at 601-02, 865 N.W.2d at 922; *Jackson*, 342 Mich. App. at 25-26, 993 N.W.2d at 15. Accordingly, the Court respectfully recommends that Master Collision be found to be in default with respect to Plaintiff's breach of contract claim.

> 2.    Unjust Enrichment

Plaintiff also asserts a claim for unjust enrichment against Master Collision based on the unpaid Contract Fulfillment Consideration and the value of the Loaned Equipment. Compl. ¶¶ 41-46. Unjust enrichment is "the equitable counterpart of a

13

legal claim for breach of contract." *LaSala v. Blue Water Beagle Club*, No. 366224, 2024 WL 4183057, at *4 (Mich. Ct. App. Sept. 12, 2024) (quoting *AFT Michigan v. Michigan*, 303 Mich. App. 651, 677, 846 N.W.2d 583, 599 (Mich. Ct. App. 2014)). The Michigan Court of Appeals has "clarified that '[the] rules, allowing simultaneous and alternative claims for breach of contract and unjust enrichment, no longer appear to be good law when both claims are asserted against the same defendant, with whom the plaintiff has an express contractual relationship.'" *Dan's Excavating, Inc. v. Michigan Dep't of Transp.*, No. 365489, 2024 WL 1597625, at *5 (Mich. Ct. App. Apr. 11, 2024) (quoting *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 199, 729 N.W.2d 898, 906 (Mich. Ct. App. 2006)). Accordingly, having recommended that a default judgment be entered with respect to Plaintiff's breach of contract claim, which encompasses the damages sought in Plaintiff's unjust enrichment claim, the Court recommends that default judgment be denied with respect to Plaintiff's unjust enrichment cause of action as such relief would be duplicative.

### 3.   Declaratory Relief

Finally, Plaintiff seeks declaratory relief in the form of a "judicial declaration of BASF's and Defendants' respective rights under the Requirements Agreement." Compl. ¶ 48. According to BASF, "Defendants contend that they have not breached the Requirements Agreement. BASF Disagrees and contends that the Requirements Agreement is in full force and effect, and that Defendants are in breach of the Requirements Agreement." *Id.* at ¶ 49. While presented as a separate cause of action, it effectively seeks the same relief that has already been addressed. To this end, a

request for declaratory relief is "'procedural only and does not create an independent cause of action.'" *HK Cap. LLC v. Fed. Deposit Ins. Corp.*, 734 F. Supp. 3d 288, 295 (S.D.N.Y. 2024) (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)). As the Court's recommendations concerning the parties' obligations are addressed above, the declaratory relief sought is unnecessary and unavailable. *See Esmael v. Shekoohfar*, No. 367351, 2025 WL 1688542, at *5 (Mich. Ct. App. June 16, 2025) ("Plaintiffs have no need for declaratory relief to guide future conduct when their claims for damages were based on alleged breaches of contract that have already occurred."); *see HK Cap. LLC*, 734 F. Supp. 3d at 295. Accordingly, the Court respectfully recommends that Plaintiff's motion be denied with respect to BASF's claim for declaratory relief.

Despite the conclusion that a default judgment is appropriate as to liability with respect to Plaintiff's breach of contract claim, the Court declines to recommend entry of a monetary judgment at this time, and instead recommends that Plaintiff be granted leave to file further substantiation.

B.    **Damages**

1.    Monetary Damages Under the Requirements Agreement

Having concluded that Master Collision is liable, the Court must also determine an appropriate amount of damages. Based upon Plaintiff's submissions, it is unable to do so. BASF seeks a total of $3,238,026.26 in damages arising under the Requirements Agreement, including: (1) $2,587,229.61 for amounts below the $3,700,000 Minimum Purchase Requirement; (2) $621,585.00, representing 90% of

15

the Contract Fulfillment Consideration; and (3) $29,211.65 for the Loaned Equipment. *See* Compl. ¶¶ 17-21, 27-33. BASF also seeks prejudgment interest and costs expended in prosecuting this action. *See* Proposed Order for Default Judgment ("Proposed Order"), DE [27-9]. Despite reaching a resolution with Lipari's estate, Plaintiff now seeks from Master Collision the entire amount to which it would potentially be entitled even in the absence of Lipari's contribution. *Id.*

The Court first addresses the amounts potentially offset by BASF's settlement with Lipari. Pursuant to the Requirements Agreement, Master Collision was required to purchase, at a minimum, $3,700,000.00 in Refinish Products from BASF. *See* Requirements Agreement ¶ 1. Lipari personally guaranteed payment of this amount and satisfaction of the Requirements Agreement. *Id.* at ¶ 13. Despite the agreement between BASF and Master Collision, guaranteed by Lipari, Master Collision only purchased $1,112,770.39 of Refinish Products from BASF, leaving a balance due of $2,587,229.61. Compl. ¶ 17. Nevertheless, prior to seeking default judgment, BASF reached a settlement with Lipari's Estate for an undisclosed amount to resolve BASF's claims asserted against Lipari. DE [77]. Despite this, BASF now seeks to recover the full contractual amount from Master Collision without accounting for its settlement with Lipari.

This is impermissible, as Michigan law – pursuant to which the Requirements Agreement is to be interpreted – does not allow for double recovery. *See Grace v. Grace*, 253 Mich. App. 357, 368, 655 N.W.2d 595, 602 (Mich. Ct. App. 2002) ("[W]here a recovery is obtained for any injury identical with another in nature, time, and place,

16

that recovery must be deducted from the plaintiff's other award."). To the contrary, "under Michigan law, only one recovery is allowed for an injury." *Id.* at 368 (quoting *Chicilo v. Marshall*, 185 Mich. App. 68, 70, 460 N.W.2d 231, 232 (Mich. Ct. App. 1990)); *see Markley v. Oak Health Care Investors of Coldwater, Inc.*, 255 Mich. App. 245, 257, 660 N.W.2d 344, 350 (Mich. Ct. App. 2003) ("We find that the principle of one recovery and the common-law rule of setoff, in the context of joint and several liability cases, continue to be the law in Michigan.").[4]

As Plaintiff offers no evidence of the amount for which it settled its claims against Lipari, and because the claims arise out of the same Requirements Agreement, it would be inequitable to allow Plaintiff to recover damages from both Master Collision and Lipari for the same alleged damages. *Grace*, 253 Mich. App. at 368, 655 N.W.2d at 602; *Markley*, 255 Mich. App. at 257, 660 N.W.2d at 350. Accordingly, although the Court has determined that a default judgment is appropriate, it is unable to determine the amount that BASF remains to recover from Master Collision following its settlement with Lipari. Accordingly, the Court respectfully recommends that Plaintiff's motion be denied without prejudice and with leave to file further evidence of the damages to which it is entitled to recover from Master Collision.

---

[4] The same is true under New York law. *See, e.g., Farrell Fritz, P.C. v. Mabey*, No. 09-CV-701(JS)(ETB), 2011 WL 5976077, at *3 (E.D.N.Y. Nov. 23, 2011) (observing that a plaintiff may not be placed "in a better position than [it] would have been in had the contract been satisfactorily performed") (quoting *Ostano Commerzanslat v. Telewide Sys. Inc.*, 880 F.2d 642, 649 (2d Cir. 1989) (prohibiting double recovery in a breach of contract case)).

The same is true with respect to the Contract Fulfillment Consideration amount. The Contract Fulfillment Consideration imposes an obligation on BASF to provide collateral that is subject to being refunded in the event Master Collision either cancels the Requirement Agreement or fails to purchase a sufficient amount of Refinish Products. *See* Requirements Agreement ¶ 3. As this amount depends on the deficit of the Minimum Required Payment, the Court is again unable to determine the appropriate award pursuant to this provision. The Court therefore recommends that Plaintiff's motion be denied without prejudice and with leave to submit further substantiation of the damages it seeks to recover.

With respect to Plaintiff's request for reimbursement of the Loaned Equipment, BASF fails to provide adequate substantiation of the value it claims Master Collision owes. The Requirements Agreement identified 13 pieces of equipment (in varying amounts per piece of equipment) that BASF loaned to Master Collision. *Id.* at ¶ 5. Neither the Requirements Agreement nor anything else submitted by Plaintiff substantiates the monetary value for these pieces of Loaned Equipment, however. Nevertheless, Plaintiff alleges in conclusory fashion that "Defendant would be unjustly enriched if permitted to retain the benefit of the . . . Equipment valued at $29,211.65." *See* Memorandum of Law in Support of Motion for Default Judgment ("BASF Mem."), DE [79-1], at 7; Compl. ¶¶ 41-46. Absent substantiation of the value of the Loaned Equipment, the Court may not accept BASF's bald assertion that it is entitled to recover $29,211.65. *U.S. Bank Nat'l Ass'n v. Kozikowski*, No. 19-CV-783(DLI)(CLP), 2022 WL 4596753, at *4 (E.D.N.Y. Sept.

18

30, 2022) (declining to award damages but permitting the party seeking a default judgment to submit additional evidence to substantiate its damages).

While the Court must accept the Complaint's well-pleaded allegations concerning liability on a motion for default judgment, the party seeking a default judgment must substantiate the damages it seeks to recover such that the Court may ascertain damages with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014). Accordingly the Court respectfully recommends that BASF's motion as to damages be denied without prejudice and with leave to renew upon submission of adequate substantiation of the value of the Loaned Equipment.

### 2.   Additional Damages

#### i.   *Prejudgment Interest*

Plaintiff also seeks an award of prejudgment interest. *See* Proposed Order for Default Judgment ("Proposed Order"), DE [27-9]. BASF does not cite authority regarding its ability to recover prejudgment interest, and, in any event, given the deficiencies described above, the Court is unable to calculate an appropriate award of prejudgment interest based on the current record. Accordingly, the Court respectfully recommends that Plaintiff's application for prejudgment interest be denied without prejudice and with leave to renew upon submission of further information and substantiation regarding the extent of its damages as described above.

19

*ii.*    *Costs*[5]

Finally, Plaintiff seeks a total of $475 in costs, including $405 for the filing fee and $70 for costs incurred in effectuating service upon Master Collision. *See* Declaration of Ryan Hersh in Support of Motion for Default Judgment ("Hersh Decl."), DE [79-4], ¶ 14, Ex. D.  The Court may take judicial notice of the filing fee. *See Doe v. Gonzalez*, No.21-CV-4580(JS)(LGD) ("The Court takes judicial notice of the filing fee receipt present on the Docket . . . .").  Likewise, Plaintiff has adequately substantiated the $70 it seeks for effectuating service upon Master Collision. *See* Hersh Decl. Ex. D; *see also Valdez v. H&S Rest. Ops., Inc.*, No. 14-CV-4701(SLT)(MDG), 2016 WL 3079028, at *9 (E.D.N.Y. Mar. 29, 2016) (awarding costs to a plaintiff seeking recovery of the "court filing fee, service of process fees, postage and on-line research").  Accordingly, the costs BASF seeks are recoverable. Nevertheless, with the expectation that Plaintiff will submit further substantiation as described above, in the interest of judicial economy and to avoid entering multiple judgments, the Court respectfully recommends that a judgment awarding costs not be entered at this time, but that Plaintiff be granted leave to renew its request for costs in a subsequent submission.

---

[5] Without substantiation, either in the Complaint or instant motion, in its first and second causes of action, Plaintiff asserts that it is entitled to recover "counsel fees." *See generally* Compl.  Neither the instant motion nor the proposed judgment reference attorneys' fees.  DE [79-1], [79-9].  Accordingly, any such application is deemed abandoned and the Court does not recommend an award of attorneys' fees. *See Payamps v. N&M Convenience & Grocery Corp.*, No. 14-CV-4895(LDH)(SJB), 2019 WL 8381264, at *4 n.3 (E.D.N.Y. Dec. 9, 2019) (holding that relief prayed for in the complaint that was not addressed in a motion for default judgment was deemed abandoned).

## IV.   CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that default judgment is appropriate as a result of the corporate Defendant's failure to appear through counsel, but that Plaintiff be granted leave to provide further information and substantiation before the Court enters judgment. Accordingly, the Court respectfully recommends that Plaintiff's motion be granted in part and denied in part to the extent described herein.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff and Lipari by electronic filing on the date below. Plaintiff is directed to serve a copy of it on Master Collision via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-CV-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York        /s/ Steven I. Locke
            November 24, 2025               STEVEN I. LOCKE
                                            United States Magistrate Judge

21